**Appeal of THOMPSON & BINGER, INC.     Docket No. 1599.**

On the evidence, *held* that the taxpayer is not a personal service corporation.

Submitted April 2, 1925; decided May 5, 1925.

*Geo. W. Newgass* and *Joseph J. Klein, Esqs.*, for the taxpayer.
*Edward C. Lake, Esq.*, for the Commissioner.

Before STERNHAGEN, TRAMMELL, and PHILLIPS.

The taxpayer appeals from a determination by the Commissioner of a deficiency of $307.26 in income and profits taxes for the fiscal year ended February 28, 1918, alleging that the Commissioner erred in refusing to find that the taxpayer was a personal service corporation. From the pleadings, oral testimony, and exhibits the Board makes the following

FINDINGS OF FACT.

The taxpayer is a New York corporation, with its principal office in New York City. The deficiency letter was mailed to the taxpayer on November 21, 1924, and states a deficiency of $307.26. The petition was filed with this Board on January 20, 1925.

The taxpayer was incorporated during the year 1917 pursuant to an agreement dated January 29, 1917, between Gustavus W. Thompson, of Syracuse, N. Y., and Walter D. Binger, of New York City, whereby these persons agreed to cause such corporation to be created for the purpose of carrying on the business of reinforced concrete construction and other engineering and construction work of a kindred nature. Such agreement provided that the corporation should have an authorized capital stock of 2,500 shares of the par value of $100 each, divided into class A and class B stock, having equal rights to participate in the dividends of the corporation, but class A alone having voting rights. It also provided in detail for the issuance of the capital stock equally between these two persons or their nominees and for a perpetuation of equal stock ownership. Binger subscribed for $50,000 of the corporation's debenture bonds at par, $25,000 to be paid for immediately and the balance as Thompson might require.

The corporation was organized and the capital stock issued in consideration of the assignment to the corporation of a construction contract obtained by Binger in his individual name. This stock, issued May 4, 1917, was as follows:

| CLASS A. | Shares. |
| --- | --- |
| Walter D. Binger | 75 |
| Gustavus W. Thompson | 75 |

| CLASS B. | |
| --- | --- |
| Walter D. Binger | 500 |
| Gustavus W. Thompson | 500 |
| Robert E. Binger | 50 |
| Harral S. Tenney | 50 |

Robert E. Binger and Harral S. Tenney were directors of the corporation and nominees of Walter D. Binger and Gustavus W. Thompson, respectively, each of whom had an agreement with his

nominee for the repurchase and reassignment of the stock issued to such nominee. No change in stock ownership occurred during the year in question.

On May 4, 1917, Walter D. Binger paid in $25,000 in cash and received $25,000 par value of the debenture bonds of the corporation, and in September, 1917, Binger purchased $15,000 additional of said bonds. No further bonds were issued during the year in question. Said bonds contained, among other provisions, the following:

THIRD. All of the aforesaid Bonds are to be subordinate in payment to the claims of the general business creditors of Thompson & Binger, Inc., heretofore existing or incurred and to all similar claims since incurred or hereafter to be incurred; and upon liquidation or dissolution of the Corporation, or upon the final distribution of its assets, such creditors shall be entitled to priority of payment in full over said Debenture Bonds.

Said bonds further provided for payment of interest at 6 per cent per annum, but contained no provision that such interest is payable only from surplus or subordinating such interest to the claims of general creditors. The bonds are payable January 1, 1927, and may be called for payment at any time prior thereto by the company on ten days' written notice.

During the year in question the corporation obtained five contracts for the construction of concrete buildings. In two of these contracts the taxpayer agrees to provide all material (excepting steel in one contract) and perform all labor necessary for the erection and completion of the building involved in accordance with plans and specifications previously prepared by the architect for the owner. In the three other contracts the taxpayer is appointed by the owner as the "legal authorized agent, engineer, and contractor to provide all material and perform all labor necessary for the erection and completion of" the building involved in accordance with plans and specifications prepared by the taxpayer. In each case the taxpayer undertakes to complete the work within a period specified in the contract. In each of such contracts it is provided that the owner shall pay to the taxpayer the actual cost of the work on the first and fifteenth of each month during the progress of the work, and upon completion of the work shall pay a further sum for the services of the taxpayer, such sum in some of the contracts being a fixed amount and in others being a percentage of the cost. In two of these contracts it is provided that, if the actual cost shall exceed a certain sum, 50 per cent of such excess shall be deducted from the fee to be paid the taxpayer for its services, such sums so to be deducted not to exceed the amount to be paid for such services; it is further provided that if the cost shall be less than such specified sum, savings shall be divided equally between the owner and the taxpayer.

The contract which was assigned to the corporation in consideration for the issue of its stock, which was the first contract obtained by the taxpayer, provided that the necessary plant for the construction work, consisting of concrete mixer, hoisting engine, etc., was to be included as a part of the cost. It was contemplated that upon the completion of the work this plant should be sold and the proceeds credited against the cost. This procedure was not followed, for on the final settlement with the owner the taxpayer retained the plant and charged the owner with 25 per cent of the cost thereof.

In subsequent contracts it was provided that the cost charged to the owner should include 25 per cent of the cost of the plant and equipment used in the construction of the building.

The taxpayer maintained offices in New York City and in Syracuse, N. Y., the New York office being in charge of Walter Binger and the Syracuse office in charge of Thompson. It regularly employed an engineer, bookkeeper, and two secretaries, and such other draftsmen and other employees as might be required from time to time. The services of these additional employees are, however, charged by it against the particular work for which their services were used.

The taxpayer rendered bills monthly or semi-monthly for the cost of the work as it progressed. In some instances such bills were rendered for materials for which the taxpayer had not yet paid.

The taxpayer purchased only such materials as were required for the particular contracts upon which it was working and never dealt in the purchase and sale of such materials.

Thompson and Walter Binger devoted all of their time to the activities of the corporation and between them obtained all of the contracts.

The taxpayer states the total cost of its operations, including labor, material, plant, rental, overhead, and compensation for the year ending February 28, 1918, was $465,900.73. At the close of the year it had outstanding accounts receivable of $46,376.13, consisting of unpaid amounts due on incompleted contracts. This sum represented invoices for material paid for by the taxpayer, also for pay rolls paid by it, plant rentals due it for use of its machinery, and compensation for its services. At that date it had outstanding debenture bonds in the sum of $40,000.

#### DECISION.

The determination of the Commissioner is approved.

#### OPINION.

PHILLIPS: The first requirement of a personal service corporation is that its income shall be ascribed primarily to the activities of the principal owners or stockholders. The taxpayer claims that its income is to be thus ascribed; that the services it rendered in these construction contracts were those of architects and engineers. From an examination of the contracts it is evident that they contemplated, not the engineering services of the taxpayer, but the erection of a completed building, and that in these contracts the taxpayer acted in the capacity of an independent contractor. Under the contracts the taxpayer was required to furnish labor and materials and to complete the building within a designated period, and the taxpayer was to receive no compensation unless and until the buildings were completed. The engineering services rendered by the principal stockholders were only one of the factors in the performance of its contracts and the income can not be ascribed primarily to such services.