APPEAL OF HUNTINGTON & GUERRY, INC.

Docket No. 3948.   Submitted March 4, 1926.   Decided April 20, 1926.

*Franklin C. Parks*, Esq., for the taxpayer.
*J. Arthur Adams*, Esq., for the Commissioner.

Before GRAUPNER and TRAMMELL.

This appeal is from the determination of a deficiency in income and profits taxes for the calendar year 1918. The deficiency asserted by the Commissioner is $3,438.39 and the whole amount thereof is in controversy in this appeal. The sole issue for consideration is whether the Commissioner properly denied the petitioner classification as a personal service corporation.

FINDINGS OF FACT.

1. The petitioner is a South Carolina corporation with its principal place of business in Greenville. During 1918 it was engaged in the business of planning, installing, and supervising construction of electrical power and lighting systems for cotton mills and other industrial plants in South Carolina. On organization early in January, 1919, the capital stock of the taxpayer was $25,000. Shares to the par vaue of $12,500 were issued to each of R. S. Huntington and DuPont Guerry, Jr., for the going business and assets of a partnership which had been organized by them in January, 1916, and conducted under the firm name of Huntington & Guerry. The assets taken over from the partnership consisted of cash in bank, tools, furniture and fixtures, and accounts receivable, less accounts payable. The net worth of these assets was $29,169.92.

2. Both Huntington and Guerry devoted practically their entire time to the affairs of the corporation. Both men were electrical engineers by profession. When the services of the taxpayer were desired, one of these men would confer with the representative of the interested party. The conditions requiring service having been explained, one or both of the stockholders would study the problem presented and make plans and recommendations for its solution. If repair, installation, or construction work was required to correct or improve conditions existing in the plant of such a concern, the

taxpayer would offer to contract for the work. Such contract work was performed upon varying bases—straight contract, which meant a contract for a definite amount and included cost of labor and materials and an estimated profit; percentage, which gave the taxpayer a profit based on an agreed percentage of the total cost of materials, labor, and overhead on a contract; labor and material, which was a charge for cost of labor and material on small jobs, plus a percentage; days work, which involved only a charge of labor on small jobs.

3. Most of the important contracts of the taxpayer were made on a percentage basis. The contracting parties in the instance of each of the contracts in evidence are designated as " purchaser " and " contractor." The germane portions of the form of contract usually employed by the contractor are as follows:

The Contractor agrees to furnish all materials except Lamp Bulbs necessary for a complete Village Lighting Installation in Purchaser's " Seneca Plant " and install same in accordance with attached Plans prepared by Contractor in consideration of a sum equal to actual cost of the work as defined below, plus a fixed sum of One Thousand Dollars ($1,000.00) to cover Contractor's overhead expenses and profit.

And the Purchaser agrees to pay the Contractor between the first and fifth day of each month an amount equal to the total value of the materials furnished by the Contractor for the work, the total amount of the payroll for the preceding month, and the expenses incurred by the Contractor in performance of the work as defined below, and a partial payment of Two Hundred Dollars ($200.00) to apply on above mentioned fixed sum.

The Purchaser also agrees to pay the Contractor upon the completion of the work, the balance due upon the fixed sum above mentioned.

The cost of work shall include the following:

> The actual cost of labor required, including the traveling expenses of men brought from outside points and the transportation of tools.
> The actual cost of Liability Insurance on the payroll.
> The actual cost of materials furnished by the Contractor, on the Purchaser's premises including transportation charges.
> The actual cost of first class foreman who shall employ all of his time not required for supervision in labor on the installation, and the living expenses of this foreman not exceeding the sum of one dollar ($1.00) per day.
> The actual cost of State or Municipal License and Inspection Fees.

The cost of work shall not include the value of the time of the contractor in ordering and following up the materials which he is to furnish, nor any of his overhead expenses, allowance for which is included above, nor the value of his time in inspecting the work, but it shall include his traveling and living expenses during such inspection and the cost of telephone and telegraph messages made on account of the work.

Additional work not included in Plans will be done at cost plus Ten Per cent (10%) said cost for Contractor's overhead expenses and plus Ten Per cent (10%) of said cost for Contractor's profit, said cost to include all labor, material and expenses involved in additional work.

The number of working hours per day shall be nine (9) and for time in excess of this, and for night and Sunday work, the rate of pay for labor shall be fifty per cent (50%) greater than for day work.

4. In practically all instances contracts were entered into between the taxpayer and its customers before work was commenced, and no major items of material or supplies required for construction work were ordered or purchased before contracts for a job were signed. The only stock of materials carried by the taxpayer was composed of materials left over from jobs, which it agreed to take back and give credit for on its contracts. This stock was held until it could be used on other contracts. Materials to be used in the performance of contracts were ordered by and shipped to the taxpayer in care of the customers. Invoices on such purchases were made out in the name of the taxpayer and required payment thereon in the month next succeeding the month in which the purchases were made. According to the usual form of contract, the taxpayer was paid "between the first and fifth of each month an amount equal to the total value of the materials furnished" by it for the work.

5. The taxpayer had four office employees who were regularly employed during the taxable year. All labor required for contract work was employed in the name of the taxpayer only for the period their services were needed. The number of such employees varied between forty and fifty per month. Liability insurance was carried in a blanket policy in the name of the taxpayer, but the proportion due to any one contract was charged by it to the concern making the contract. All discounts received on materials purchased were retained by the taxpayer. The schedule of purchases, labor costs, collections, and payments made by the taxpayer for the taxable year is as follows:

| Month, 1918. | Total material purchased to end of each month. | Total amount of wages paid to end of each month. | Total material and wages to end of each month. | Total amount paid by clients to end of each succeeding month. | | Total amount paid to electrical supply houses, jobbers, etc., to end of each succeeding month. |
|---|---|---|---|---|---|---|
| January | $5,333.46 | $2,968.17 | $8,301.63 | February | $20,654.57 | $22,210.98 |
| February | 10,249.92 | 5,440.48 | 15,690.40 | March | 37,020.81 | 30,783.21 |
| March | 19,672.08 | 7,960.39 | 27,632.47 | April | 45,030.65 | 35,602.57 |
| April | 25,555.45 | 10,326.84 | 35,882.29 | May | 60,027.79 | 43,882.35 |
| May | 32,973.98 | 13,469.00 | 46,442.98 | June | 67,875.01 | 47,310.98 |
| June | 44,709.62 | 16,356.19 | 61,065.81 | July | 90,766.62 | 65,061.44 |
| July | 59,068.19 | 19,948.57 | 79,016.76 | August | 111,678.45 | 74,454.13 |
| August | 71,033.16 | 23,741.33 | 94,774.49 | September | 134,856.57 | 90,520.95 |
| September | 79,615.50 | 27,789.13 | 107,404.63 | October | 145,524.87 | 96,108.74 |
| October | 94,429.28 | 32,547.84 | 126,977.12 | November | 174,589.45 | 104,476.01 |
| November | 103,933.28 | 37,293.59 | 141,226.87 | December | 196,534.88 | 116,875.27 |
| December | 121,458.32 | 43,974.68 | 165,433.00 | January, 1919 | 237,998.98 | 148,866.48 |

6. The bank balances and deposits of the taxpayer for each of the months during the year 1918 were as follows:

| | Bank balance (first day of month). | Bank deposit. | | Bank balance (first day of month). | Bank deposit. |
|---|---|---|---|---|---|
| February | $3,101.89 | $23,334.57 | October | $4,805.47 | $10,727.27 |
| March | 1,332.94 | 18,101.18 | November | 3,341.86 | 18,443.19 |
| April | 1,033.91 | 8,059.77 | December | 4,132.16 | 21,968.18 |
| May | 46.18 | 16,007.14 | January | 3,451.99 | 41,464.10 |
| June | 654.63 | 8,852.22 | | | |
| July | 197.29 | 23,388.41 | Average | 2,736.11 | |
| August | 568.44 | 20,911.83 | Total | | 237,439.48 |
| September | 5,166.60 | 26,181.62 | | | |

7. The earnings and expenses of the taxpayer for the year 1918, as shown by statement accompanying its income-tax return for 1918, were as follows:

Gross earnings:

| | | |
|---|---|---|
| Profits on finished jobs | $12,811.02 | |
| Discounts from jobbers | 540.08 | |
| Suspense | 509.41 | |
| Estimated profits 1918 | 20,889.00 | |
| | 34,749.51 | |
| Less losses on finished jobs | 2,006.53 | |
| | | $32,742.98 |

Overhead and other expense:

| | | | |
|---|---|---|---|
| Prospective jobs | | 88.10 | |
| Salaries of officers | | 12,000.00 | |
| Office expense | | 6,765.38 | |
| Charity | | 220.00 | |
| Incorporation | | 50.00 | |
| Advertising— | | | |
| Southern Textile Exposition | $279.87 | | |
| Miscellaneous | 446.52 | | |
| | | 726.39 | |
| Automobile depreciation | | 1,692.73 | |
| Automobile (U. S. A.) | | 277.70 | |
| Depreciation— | | | |
| Furniture and fixtures (30 per cent) | $410.96 | | |
| Tools (50 per cent) | 603.00 | | |
| | | 1,013.96 | |
| | | | 22,834.28 |

Net profit _____ 9,908.70

8. The assets and liabilities of the taxpayer as of December 31, 1918, as shown by statement accompanying its income-tax return for 1918, were as follows:

ASSETS AND LIABILITIES, DECEMBER 31, 1918

### Assets.

| | |
|---|---|
| Cash in bank | $3,451.99 |
| Receivables (Schedule 1) | 44,308.42 |
| Investments (Schedule 4) | 4,608.17 |
| Inventories (Schedule 4) | 5,533.99 |
| Estimated profits 1918 | 20,889.00 |
| | 78,791.57 |

### Liabilities.

| | |
|---|---|
| Accounts payable | $30,330.34 |
| Unfinished jobs | 9,382.61 |
| Capital stock | 10,000.00 |
| Undivided profits | 29,078.62 |
| | 78,791.57 |

9. The assets and liabilities of the predecessor copartnership as of December 31, 1917, were as follows:

### Assets.

| | | |
|---|---|---|
| Cash in bank | | $4,078.24 |
| Receivables: | | |
| Accounts (Schedule 1) | $40,465.07 | |
| Advances to employees | 3.37 | |
| | | 40,468.44 |
| Investments: | | |
| Southern Textile Exposition | 150.00 | |
| "Liberty bond" | 100.84 | |
| | | 250.84 |
| Inventories: | | |
| Automobile (Lexington) | 600.00 | |
| Automobile (U. S. A.) | 277.70 | |
| Furniture and fixtures | 755.26 | |
| Books, stationery, etc | 200.00 | |
| Electric materials and supplies | 575.39 | |
| Tools | 512.06 | |
| | | 2,920.41 |
| Total assets | | 47,717.93 |

### Liabilities.

| | | |
|---|---|---|
| Accounts payable (Schedule 2) | | $18,548.01 |
| Total liabilities | | 18,548.01 |
| Investments: | | |
| R. S. Huntington | $5,000.00 | |
| DuPont Guerry, Jr | 5,000.00 | |
| Undivided profits (from attached sheet) | 19,169.92 | |
| Net worth | | 29,169.92 |
| Total | | 47,717.93 |

*The deficiency is $3,438.39. Appeal of Thompson & Binger, Inc., 1 B. T. A. 1093. Order will be entered accordingly.*